IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Judge Edward W. Nottingham**

Civil Action No. 04–cv–02550–EWN
 (*Consolidated with* Civil Action No. 04–cv–02551–EWN)

In re:

CREEKSIDE HOTEL ASSOCIATES LLC,                     Case No. 02–27920 SBB

    Debtor.

_____

GENERAL INNKEEPERS ACCEPTANCE                    Adversary Proceeding No.
CORPORATION and                                                          04–01763 SBB
HOLIDAY HOSPITALITY FRANCHISING INC.,

    Plaintiffs/Appellees,

v.

CREEKSIDE HOTEL ASSOCIATES LLC,

    Defendant/Appellant.

_____

**ORDER AND MEMORANDUM OF DECISION**
_____

      Appellant/Debtor Creekside Hotel Associates LLC ("Appellant/Debtor") appeals from an order of the bankruptcy court revoking Appellant/Debtor's order of confirmation. The bankruptcy court's revocation was based upon a motion and complaint filed by Appellees General Innkeepers Acceptance Corporation and Holiday Hospitality Franchising Inc. (collectively "Appellees"). Jurisdiction is based on 28 U.S.C. § 158 (2005).

-1-

## *1.    Factual Background*

Appellant/Debtor operates a hotel in Glendale, Colorado, under a franchise from Appellee Holiday Hospitality Franchising, Inc. (Opening Br. of Appellant in Consolidated Appeals at 2 [filed Apr. 15, 2005] [hereinafter "Appellant's Br."]; Answer Br. of Holiday Hospitality Franchising, Inc., and General Innkeepers Acceptance Corp. at 1 [filed Apr. 25, 2005] [hereinafter "Appellees' Resp."].) Appellant/Debtor filed a petition for Chapter 11 bankruptcy on November 6, 2002. (Appellant's Br. at 2; Appellees' Resp. at 1.) In the bankruptcy proceedings, Appellant/Debtor filed a plan of reorganization. (Appellant's Br. at 3; Appellees' Resp. at 1.)

During the hearing on the confirmation of the plan of reorganization, the bankruptcy court relied upon Appellant/Debtor's "Exhibit J," which was "a balance sheet of" the K.S. Brown Living Trust and the Ryan Brown Testamentary Trust. (R. on Appeal, Vol. III at 6 [Tr. of 11/29/04 Hr'g] [filed Mar. 16, 2005] [hereinafter "R. on Appeal"].)[1] The K.S. Brown Living Trust provided guarantees to the bankruptcy court of its support of Appellant/Debtor. (R. on Appeal, Vol. III at 6 [Tr. of 11/29/04 Hr'g], Vol. VII, Ex. 12 [Limited Guaranty].) Roderick Brown ("Brown"), Appellant/Debtor's control person and the settlor of the K.S. Brown Living Trust, prepared Exhibit J. (*Id.*, Vol. IV at 137–38 [Trial Tr. on 10/6/04], Vol. III at 6 [Tr. of 11/29/04 Hr'g].) Brown, during the time of the confirmation hearing, was ill with cancer. (*Id.*,

---

[1]The bankruptcy court referred to Exhibit J as "a balance sheet of the Trusts." (R. on Appeal, Vol. III at 6 [Tr. of 11/29/04 Hr'g].) The bankruptcy court earlier explained that the word "Trusts" refers to "the K.S. Brown Living Trust" and "the Ryan Brown Testamentary Trust." (*Id.*)

Vol. IV at 144–47 [Trial Tr. on 10/6/04].)  On November 28, 2003, the bankruptcy court filed an order confirming Appellant/Debtor's plan of reorganization *nunc pro tunc* to November 17, 2003. (Appellant's Br. at 3; Appellees' Resp. at 1.)

Appellees later learned that Chicago Title Insurance Company had a $510,373.90 judgment against the Kay S. Brown Living Trust, Kay S. Brown, and Roderick R. Brown, jointly and severally (hereinafter "the Chicago Title judgment"), which Exhibit J did not disclose.  (R. on Appeal, Vol. III at 8 [Tr. of 11/29/04 Hr'g], Vol. VII, Ex. 9 [Order].)  Thus, on May 7, 2004, Appellees filed a combined motion that requested, *inter alia*, a revocation of order of confirmation pursuant to 11 U.S.C. § 1144 based upon Appellant/Debtor's failure to disclose the Chicago Title judgment.  (Appellant's Br. at 3; Appellees' Resp. at 2.)  On July 29, 2004, Appellees filed a complaint, by adversary proceeding, seeking to revoke the confirmation of Appellant/Debtor's plan for the same reason.  (Appellant's Br. at 3; Appellees' Resp. at 2–3.)

The combined motion and adversary complaint were consolidated for trial, which the bankruptcy court held on October 6, 2004.  (Appellant's Br. at 3; Appellees' Resp. at 3.) Exhibit J from the confirmation hearing, however, was absent from this October 6, 2004 trial. After the confirmation hearing, the bankruptcy court had returned Exhibit J to Appellant/Debtor with orders for it to retain Exhibit J.  (R. on Appeal, Vol. III at 8 [Tr. of 11/29/04 Hr'g].) Appellant/Debtor has been unable to produce Exhibit J, despite the bankruptcy court's request, and it remains missing to this day.  (*Id.*, Vol. III at 8–9 [Tr. of 11/29/04 Hr'g].)

On November 29, 2004, the bankruptcy court entered its oral ruling that is the subject of this appeal.  (Appellant's Br. at 4; Appellees' Resp. at 3–4.)  The bankruptcy court found fraud

by Brown and revoked Appellant/Debtor's order of confirmation. (*Id.*) Regarding the issue of whether Appellees' filings fell within the time frame set forth in 11 U.S.C. § 1144, the bankruptcy court stated that

> [u]nder the circumstances in this case, even though relief was originally sought by a motion, there is no demonstrable prejudice to proceed and adjudicate in this matter. Here on May 7th, 2004, within the six month period the Debtor was given virtually all of the facts in the motion needed under § 1144 and the Debtor did not then object to the form pursuant to Rule 7001(5) in its response to the combined motions within the six month period, but raised its objection for the first time on July 7th, 2004 outside the six month period at which time this Court ordered that to avoid any potential prejudice to the Debtor and to assure due process that this matter and the essential claims and elements articulated in the motion be put in the form of an adversary proceeding.
> That is what happened, in fact. The Court finds that there is an absence of demonstrable prejudice to the Debtor. An adversary proceeding was initiated and tried and thus this Court denies the Defendant's motion to dismiss or argument that the complaint was time barred.

(R. on Appeal, Vol. III at 17 [Tr. of 11/29/04 Hr'g].) The bankruptcy court addressed the impact of Brown's illness on the litigation in the case, explaining that

> [w]hile the Court recognizes that during the time of some of the events at issue Mr. Brown was undergoing cancer treatments, the Court specifically finds that those treatments and his indicated impairment by his testimony alone associated with them do not excuse the various different instances of inconsistent, curious or what this Court would find to be false testimony in depositions and in sworn testimony before the Court. The confirmation order as best as the Court can determine was obtained by deception and misleading statements of the Debtor through the acts of its manager, Mr. Brown.

(*Id.*, Vol. III at 9–10 [Tr. of 11/29/04 Hr'g].)  After addressing a myriad of other factors, the bankruptcy court concluded that the

> [c]onfirmation of the Debtor's plan is revoked because of the misrepresentations and deception committed by the Debtor. . . . Any parties that have acquired rights, title or interests in property in good faith reliance on the order of confirmation shall not have their rights jeopardized or diminished or terminated.  Further, pursuant to 11 U.S.C. 1112(b), (b)(6) and (b)(7), and because of a breach of good faith based on the findings concluded above, and for the various reasons recited by this Court, bankruptcy case 02–27920 SBB is dismissed.

(*Id.*, Vol. III at 18 [Tr. of 11/29/04 Hr'g].)

## 2. *Procedural History and Standard of Review*

Appellant/Debtor filed its notice of appeal in this court in civil action number 04–cv–02550–EWN on December 13, 2004, on some issues related to the bankruptcy court's decision.  (Notice of Appeal [filed Dec. 13, 2004.)  Appellant/Debtor also filed its notice of appeal in this court in civil action number 04–cv–02551–EWN on the same day regarding other issues related to the bankruptcy court's decision.  (Notice of Appeal [filed Dec. 13, 2004].)  These appeals were consolidated on March 31, 2005.  (Order Re Mot. to Consolidate Appeals and Setting Briefing Schedule [filed Mar. 31, 2005].)  Appellant/Debtor filed its opening brief on the consolidated appeals on April 15, 2005.  (Appellant's Br.)  Appellees filed their response brief on April 25, 2005, (Appellees' Resp.), and Appellant/Debtor filed its reply brief on May 5, 2005.  (Reply Br. of Appellant in Consolidated Appeals [filed May 5, 2005].)

"On a bankruptcy appeal, the district court is to review the bankruptcy court's conclusions of law *de novo*." *In re Schwinn Cycling and Fitness, Inc.*, 313 B.R. 473, 476 (D.

Colo. 2004). The district court reviews the bankruptcy court's findings of fact on a clearly erroneous standard. *In re Lacy*, 304 B.R. 439, 443 (D. Colo. 2004). Here, Appellant/Debtor raises three grounds for appeal, which I address in turn.

### 3. *Whether Appellees' Properly Requested the Bankruptcy Court to Revoke the Order of Confirmation*

Appellant/Debtor contends that the bankruptcy court erred in ruling on Appellees' request to revoke the order of confirmation because Appellees' request was untimely. (Appellant's Br. at 4–6.) 11 U.S.C. § 1144 governs the issue of under what conditions a bankruptcy court may revoke an order of confirmation. This statutory provision states that:

> On request of a party in interest at any time before 180 days after the date of the entry of the order of confirmation, and after notice and a hearing, the court may revoke such order if and only if such order was procured by fraud. An order under this section revoking an order of confirmation shall —
> (1) contain such provisions as are necessary to protect any entity acquiring rights in good faith reliance on the order of confirmation; and
> (2) revoke the discharge of the debtor.

11 U.S.C. § 1144 (2005). Under Federal Rule of Bankruptcy Procedure 7001, "a proceeding to revoke an order of confirmation of a chapter 11, chapter 12, or chapter 13 plan," is an adversary proceeding. Fed. R. Bankr. Proc. 7001(5) (2005). Based upon these provisions, Appellant/Debtor argues that (1) Appellees were required, within 180 days after the entry of the order of confirmation, to file a complaint in an adversary proceeding in order to seek a revocation of the order of confirmation, and (2) Appellees filed their adversary complaint 255 days after the entry of the order of confirmation. (Appellant's Br. at 4–6.) Although, according to

Appellant/Debtor, Appellee's motion was filed within 180 days, under 11 U.S.C. § 1144 and Rule 7001(5), Appellees were required to initiate an adversary proceeding via complaint within 180 days. (*Id.*) Thus, Appellant/Debtor argues that the bankruptcy court erred in revoking the order of confirmation. (*Id.*)

Numerous courts have set forth the basic rule that a party in interest must seek revocation of an order of confirmation through an adversary proceeding. *In re Zolner*, 249 B.R. 287, 292 (N.D. Ill. 2000); *In re V & M Mgmt., Inc.*, 215 B.R. 895, 897–98 (Bkrtcy. D. Mass. 1997); *In re Hoppel*, 203 B.R. 730, 731–32 (Bkrtcy. D. Mont. 1997); *In re Diamond Mortgage Corp. of Illinois*, 105 B.R. 876, 880–81 (Bkrtcy. N.D. Ill. 1989); *In re Air One, Inc.*, 75 B.R. 1003, 1004–05 (Bkrtcy. E.D. Mo. 1987); *cf. In re Klus*, 173 B.R. 51, 57 (Bkrtcy. D. Conn. 1994) (regarding parallel rule 11 U.S.C. § 1330); *In re Siciliano*, 167 B.R. 999, 1014 (Bkrtcy. E.D. Pa. 1994) (same). This requirement, however, may be waived by the other party. *In re Zolner*, 249 B.R. at 292; *In re V & M*, 215 B.R. at 898. The bankruptcy court determined that Appellant/Debtor's failure to object in its initial response waived an objection to Appellees' filing of a motion instead of a complaint. (R. on Appeal, Vol. III at 17 [Tr. of 11/29/04 Hr'g].) This conclusion does not constitute reversible error.

More important, Appellant/Debtor has not shown demonstrable prejudice from the bankruptcy court's decision. As another district court explained, "unless the party is able to demonstrate prejudice by the failure to file an adversary proceeding, a court will find the error constitutes harmless error." *In re Zolner*, 249 B.R. at 292. In similar contexts, numerous courts have reached the same conclusion — that the party opposing the revocation of the plan must

show "demonstrable prejudice from the failure to proceed in an adversary proceeding." *In re Lewis*, 142 B.R. 952, 955 (D. Colo. 1992) (collecting cases).[2] In light of the foregoing, the bankruptcy court did not err in considering Appellees' motion to revoke the order of confirmation, and a decision to the contrary on appeal would needlessly elevate form over substance.

### *4.   Doctrine of Mootness*

Appellant/Debtor also argues that the bankruptcy court erred in granting Appellees' 11 U.S.C. § 1144 motion because Appellant/Debtor purportedly fully performed the reorganization, rendering the revocation issue moot. (Appellant's Br. at 6–7.) "When events occur that prevent the . . . court from granting any effective relief, an issue is moot." *Neighbors For Rational Dev., Inc., v. Norton*, 379 F.3d 956, 965 (10th Cir. 2004) (quoting *Casad v. United States Dep't of Health & Human Servs.*, 301 F.3d 1247, 1254 [10th Cir. 2002]) (ellipses in original). The doctrine of mootness applies to 11 U.S.C. § 1144 cases if (1) the reorganization plan is substantially consummated and (2) no effective relief can be fashioned. *In re Servico, Inc.*, 161 B.R. 297, 300–01 (S.D. Fla. 1993); *In re Circle K Corp.*, 171 B.R. 666, 669 (Bkrtcy. D. Ariz. 1994).

---

[2]The bankruptcy court's decision may also be appropriate under 11 U.S.C. § 105(a), which permits the bankruptcy court to "tak[e] any action or mak[e] any determination necessary or appropriate to enforce or implement court orders or rules, or to prevent an abuse of process." 11 U.S.C. § 105(a) (2005). Bankruptcy courts are split on whether this rule permits courts to address motions, as opposed to complaints, that request revocation of an order of confirmation. *Compare In re Bulson*, — B.R. —, 2005 WL 1397149, n.22 (Bkrtcy. W.D. Mich. 2005); *with In re Air One*, 75 B.R. at 1004–05.

Here, assuming that the reorganization plan has been substantially consummated, the bankruptcy court was still able to provide relief by revoking the reorganization plan and dismissing the bankruptcy case. (R. on Appeal, Vol. III at 18 [Tr. of 11/29/04 Hr'g].) Thus, the bankruptcy court fashioned effective relief, so the doctrine of mootness did not prevent the bankruptcy court from ruling. Importantly, the bankruptcy court also protected the rights of the other creditors and related parties. As the Seventh Circuit has explained, "if a plan of reorganization has been carried out, so that providing relief to an objector to the plan would require rescinding it and forcing a host of innocent third parties (the other creditors) to return the money, securities, or other things of value that they had obtained pursuant to the plan, the court will not entertain the objection." *S.E.C. v. Wozniak*, 33 F.3d 13, 15 (7th Cir. 1994) (Posner, C.J.). Here, the bankruptcy court made sure that its ruling did not adversely affect that rights of other creditors and related parties. (R. on Appeal, Vol. III at 18 [Tr. of 11/29/04 Hr'g].) Accordingly, Appellant/Debtor's appeal fails on this issue.

### 5.     *The Bankruptcy Court's Finding of Fraud*

Finally, Appellant/Debtor argues that the bankruptcy court erred in its determination that Roderick Brown, Appellant/Debtor's control person, acted fraudulently. (Appellant's Br. at 8–10.) Appellant/Debtor sets forth four arguments in support of its contention that the bankruptcy court erred as to this point: (1) Brown did not intend to deceive the bankruptcy court at the confirmation hearing, (2) the bankruptcy court did not rely upon Exhibit J in deciding to confirm the reorganization plan, (3) Exhibit J was not material to the reorganization plan because Appellant/Debtor paid its creditors in full, and (4) the bankruptcy court could not have

been misled by Exhibit J because it reflected the assets and liabilities of "the Brown Family Trusts," to which the Chicago Title judgment was not directed. (*Id.*)  I address each argument in turn.

First, Appellant/Debtor argues that Brown did not intend to deceive the bankruptcy court at the confirmation hearing because he was ill with cancer at the time he prepared Exhibit J. (*Id.* at 8–9.)  As stated above, the bankruptcy court addressed this issue in its factual findings, explaining that

> [w]hile the Court recognizes that during the time of some of the events at issue Mr. Brown was undergoing cancer treatments, the Court specifically finds that those treatments and his indicated impairment by his testimony alone associated with them do not excuse the various different instances of inconsistent, curious or what this Court would find to be false testimony in depositions and in sworn testimony before the Court.  The confirmation order as best as the Court can determine was obtained by deception and misleading statements of the Debtor through the acts of its manager, Mr. Brown.

(R. on Appeal, Vol. III at 9–10 [Tr. of 11/29/04 Hr'g].)  Whether Brown's illness and treatment affected his purported knowledge of deception, or reckless disregard of the truth, is a factual issue.  Thus, the bankruptcy court's conclusions should only be reversed if they are clearly erroneous.  *In re Lacy*, 304 B.R. at 443.  Appellant/Debtor's single citation to the fact that Brown suffered from cancer during the pertinent time frame does not demonstrate that the bankruptcy court clearly erred in its determination.

Second, Appellant/Debtor argues that the bankruptcy court did not rely upon Exhibit J in its original decision to order confirmation of the reorganization plan.  (Appellant's Br. at 9.)  This

argument is directly contradicted by the bankruptcy court's own ruling, wherein it stated that it had "relied" upon Exhibit J "in determining the solvency of Debtor's plan guarantors and the feasibility of the Debtor's plan." (R. on Appeal, Vol. III at 6 [Tr. of 11/29/04 Hr'g].) Accordingly, Appellant/Debtor's argument as to this point is without merit.

Third, Appellant/Debtor argues that Exhibit J was not material to the reorganization plan because it paid its creditors in full. (Appellant's Br. at 9.) While Brown's testimony at the revocation hearing supports the contention that Appellant/Debtor had paid its creditors as of the date of the revocation hearing, (R. on Appeal, Vol. IV at 144–47 [Trial Tr. on 10/6/04]), the bankruptcy court found, *inter alia*, that Appellant/Debtor's payments had been "tardy." (R. on Appeal, Vol. III at 6 [Tr. of 11/29/04 Hr'g].) Appellant/Debtor has set forth no evidence that its payments under the plan of reorganization were timely. Thus, Appellant/Debtor's argument as to this point fails.

Fourth, Appellant/Debtor argues that the bankruptcy court could not have been misled by Exhibit J because it reflected the assets and liabilities of "the Brown Family Trusts," to which the Chicago Title judgment was not directed. (Appellant's Br. at 9–10.)[3] Appellant/Debtor,

---

[3] Appellant/Debtor's argument is quite unclear, but the foregoing appears to be a summation of what it is trying to argue. It is also possible to read Appellant/Debtor's argument to be that the Chicago Title judgment affected "the Brown Family Trusts," while it was the K.S. Brown Living Trust that guaranteed Appellant/Debtor's performance under the plan. (Appellant's Br. at 9.) Such an argument, however, would be nonsensical because the Chicago Title judgment is against the K.S. Brown Living Trust. (R. on Appeal, Vol. VII, Ex. 9 [Order].)

however, provides no evidence that Exhibit J dealt with the "Brown Family Trusts."[4]  Rather, the only evidence on appeal is that Exhibit J was "a balance sheet of" the K.S. Brown Living Trust and the Ryan Brown Testamentary Trust.  (R. on Appeal, Vol. III at 6 [Tr. of 11/29/04 Hr'g].)  Thus, since Exhibit J's statements falsely portrayed the K.S. Brown Living Trust as being financially stable, the bankruptcy court did not err in concluding that Brown's fraudulent actions relating to Exhibit J impacted the order of confirmation.

### 6. *Conclusion*

Based on the foregoing, it is therefore

ORDERED that the bankruptcy court's November 29, 2004 order is AFFIRMED.

Dated this  9th  day of August, 2005.

BY THE COURT:

s/Edward W. Nottingham
EDWARD W. NOTTINGHAM
United States District Judge

---

[4] Indeed, Appellant/Debtor does not describe to what it is referring when it discusses the "Brown Family Trusts."  Since it refers to "Trusts," in the plural, Appellant/Debtor may even be including the K.S. Brown Living Trust.